UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                          :
**SECURITIES AND EXCHANGE COMMISSION,**    :
                                                          :
                    **Plaintiff,**      :
                                                          :      **12 Civ. 1012 (HB)**
        - against -                        :
                                                          :      **OPINION & ORDER**
**BRENT C. BANKOSKY,**                       :
                                                          :
                    **Defendant.**    :
                                                          :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., District Judge:**

      This action is before the Court upon the motion of the Securities and Exchange Commission ("SEC") to prohibit permanently Brent C. Bankosky ("Bankosky") from acting as an officer or director of a public company pursuant to 15 U.S.C. § 78u(d)(2).[1]

## BACKGROUND

      On March 15, 2012, this Court entered a Consent Judgment against Bankosky that (1) permanently enjoined him from future violations of the securities laws, (2) held him liable for disgorgement of $63,000, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $10,076 and a civil penalty in the amount of $63,000, and (3) allowed for the SEC to file the present motion, for which the allegations in the Complaint are accepted as true.

      Bankosky was employed at Takeda Pharmaceuticals International, Inc. ("Takeda"), where he was a director in Takeda's business development group. Compl. ¶ 1. Through his work, Bankosky obtained material, nonpublic information about an anticipated strategic alliance between Cell Genesys, Inc. ("Cell Genesys") and Takeda and about Takeda's agreement to acquire Millennium Pharmaceuticals, Inc. ("Millennium"). *Id*. ¶ 2. In breach of his duty to his employer and its shareholders, Bankosky used this information to ·trade in his personal account and purchase out-of-the-money call options in the securities of Cell Genesys and Millennium. *Id*.

---

[1] "[T]he court may prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who violated section 78j(b) of this title or the rules or regulations thereunder from acting as an officer or director . . . if the person's conduct demonstrates unfitness to serve as an officer or director . . . ."

Through these trades, Bankosky profited over $63,000 on an initial investment of $37,500 for a 169% rate of return. *Id.* Later, Bankosky again traded on inside information by purchasing out-of-the-money call options in the securities of two other issuers—Arena Pharmaceutical, Inc. ("Arena") and AMAG Pharmaceutical, Inc. ("AMAG")—that were engaged in confidential discussions with Takeda. Bankosky nevertheless incurred losses from these trades after Arena announced disappointing results for the clinical trials of an unrelated drug, and AMAG's stock price ultimately lost value despite an initial increase in price following the announcement of a deal with Takeda. *Id.* ¶¶ 28–31.

## DISCUSSION

To determine whether Bankosky is unfit to serve as an officer or director, the Court may consider the following factors: "(1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's 'repeat offender' status; (3) the defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *S.E.C. v. Patel*, 61 F.3d 137, 141 (2d Cir.1995) (internal quotation marks omitted). While the Second Circuit has deemed these factors to be "useful in making the unfitness assessment," it did not hold that "they are the only factors that may be taken into account or even that it is necessary to apply all these factors in every case." *Id*. Overall, the Court has "substantial discretion in deciding whether to impose a bar to employment in a public company." *Id*. The Second Circuit has also "suggest[ed] that, before imposing a permanent bar, the court should consider whether a conditional bar (e.g., a bar limited to a particular industry) and/or a bar limited in time (e.g., a bar of five years) might be sufficient, especially where there is no prior history of unfitness." *Id*. at 142.

    a. *Egregiousness*

Bankosky's insider trading began almost immediately after starting at Takeda in 2008, continued for a period of two years, and involved four different companies and at least thirteen different trades. Compl. ¶¶ 20, 28–29. While undeniably serious and not isolated, *see S.E.C. v. Gunn*, No. 08 Civ. 1013, 2010 WL 3359465, at *4 (N.D. Tex. Aug. 25, 2010) ("Insider trading is a flagrant, deliberate, and serious violation of the federal securities laws; in no sense is it merely technical." (internal citations omitted)), Bankosky's conduct lacks certain other aspects that courts usually rely on when finding securities law violations to be egregious. *See, e.g.*, *S.E.C. v. Pallais*, No. 08 Civ. 8384, 2010 WL 2772329 (S.D.N.Y. July 9, 2010) (involving the repeated

release of fraudulent press releases that made material misstatements and omissions regarding a public company's business operations and financial results); *S.E.C. v. Resnick*, 604 F. Supp. 2d 773, 784 (D. Md. 2009) (involving a fraudulent scheme to overstate the financial results of a public company by $700 million); *S.E.C. v. Robinson*, No. 00 Civ. 7452, 2002 WL 1552049, at *5 (S.D.N.Y. July 16, 2002) (finding defendant's conduct was "egregious" when defendant lied about his company having a product to market, ties to established telecommunications companies, and an expectation of reaping billions of dollars in sales revenue).

    b. *Repeat Offender Status*

It is particularly relevant that Bankosky is not a repeat offender. *See S.E.C. v. Stanard*, No. 06 CIV 7736(GEL), 2009 WL 196023, at *4 (S.D.N.Y. Jan. 27, 2009). Bankosky did trade on inside information repeatedly over a period of two years, but this does not mean that he is a repeat offender in the sense that he is "someone who has committed separate violations of securities laws in the past." *S.E.C. v. iShopNoMarkup.com, Inc.*, No. 04 CV 4057 DRH ARL, 2012 WL 716928, at *5 (E.D.N.Y. Mar. 3, 2012) (citing Second Circuit cases).

    c. *Role or Position*

Bankosky was not an officer or director of Takeda, but nor was he, as Bankosky argues, a low-level employee. *See* Def.'s Opp'n Br. 13. Bankosky was acting in a corporate or fiduciary capacity as a director of Business Development and Global Licensing, where he and his colleagues were involved in the due diligence and negotiations for deals with other pharmaceutical companies. Compl. ¶¶ 16–18. And Takeda's Code of Conduct, which forbids employees from trading based on material nonpublic information, including "significant acquisitions," "joint venture transactions," "major new contracts," and "licenses," Compl. ¶ 19, is aimed squarely at employees such as Bankosky.

    d. *Scienter*

"'Scienter, as used in connection with the securities fraud statutes, means intent to deceive, manipulate, or defraud, or at least knowing misconduct.'" *S.E.C. v. Kelly*, 765 F. Supp. 2d 301, 319 (S.D.N.Y. 2011) (quoting *S.E.C. v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996)). The SEC has not alleged that Bankosky "engaged in clandestine trading such as tipping, purchasing stock in the names of other people, or trading in a secret account." *S.E.C. v. Shah*, No. 92 CIV. 1952 (RPP), 1993 WL 288285, at *7 (S.D.N.Y. July 28, 1993). The purchases

did take place over a two year period and were unquestionably timed to significant corporate events at Takeda of which Bankosky was aware—evincing knowing misconduct.

What troubles me more are Bankosky's responses to the SEC's investigation and his failure to provide the Court any assurance of his acceptance of responsibility. During his sworn testimony with the SEC, Bankosky was "asked if he was aware of 'whether anybody at Takeda was working on a deal with Cell Genesys' at the time he purchased Cell Genesys securities . . . ." Pl.'s Reply 3–4 (quoting hearing transcript). Bankosky answered "No." *Id.* at 4. "When asked whether he 'performed any work related to Arena,' Bankosky again said 'No.'" *Id.* These statements are flatly contradicted by the allegations in the Complaint, which the parties agreed are to be accepted as true for the purposes of deciding the motion before me today. *See, e.g.*, Compl. ¶ 28 ("Bankosky was aware of the confidential discussions with Arena and participated in these discussions."). Furthermore, the Complaint indicates some of the very evidence that supports those allegations, *see* Compl. ¶¶ 17–18 (discussing emails with colleagues), evidence that Bankosky now argues is insufficient to establish that he possessed inside information, *see* Def.'s Opp'n 6–8. Bankosky entered into the Consent Judgment neither admitting nor denying the allegations in the Complaint, as he was free to do, but now is not the time to argue his innocence, particularly where on this motion he has ostensibly admitted wrongdoing. While Bankosky may not have conducted the trades covertly, Bankosky's attempts now to call into question the seriousness of his actions are at the very least misleading and disingenuous.

   e. Economic Stake

Bankosky had a personal economic stake in his violations of the securities laws. That he ultimately lost money on the Arena and AMAG investments, *see* Def.'s Opp'n 19, does not mean that he was somehow less committed to the scheme from the beginning.

   f. Likelihood That Misconduct Will Recur

In recognizing the "loss of livelihood and the stigma attached to permanent exclusion from the corporate suite" that would result from an officer and director bar, the Second Circuit has held that "[a]lthough it is not essential for a lifetime ban that there be past violations, we think that it is essential, in the absence of such violations, that a district court articulate the factual basis for a finding of the likelihood of recurrence." *Patel*, 61 F.3d at 142. Here, the SEC points to the pattern of Bankosky's conduct over his two-year employment with Takeda—where he knowingly traded on the basis of information he had a duty to keep confidential—and his

attempt to "conceal his misconduct in testimony before the Commission." Pl.'s Supp. 17. The SEC further argues that, based on his brief employment with a different pharmaceutical company in the nearly identical position just following his leaving Takeda, there will likely be opportunities in the future for Bankosky to repeat the conduct alleged here. Pl.'s Supp. 18; Pl.'s Reply 6; *see also* Riely Decl. Ex. G. Though Bankosky has been unable to secure employment since, I am persuaded that the SEC has "adequately demonstrated that it lacks assurances against future misconduct." *S.E.C. v. Dibella*, 3:04CV1342 (EBB), 2008 WL 6965807, at *11 (D. Conn. Mar. 13, 2008), *aff'd*, 587 F.3d 553 (2d Cir. 2009). Bankosky argues that the "remedies that have already been imposed against [him]—with his consent—are more than enough to ensure there is a low likelihood of future recurrences of misconduct." Def.'s Opp'n 21; *see also Shah*, 1993 WL 288285, at *6 n.5 (declining to impose a bar where the defendant had already been severely punished). But in light of his unavailing attempts both in his briefs and at oral argument to suggest that he lacked inside information or that he was completely truthful to the SEC, the remedies already set forth in the Consent Judgment may be insufficient to deter future misconduct. Apart from his dismay at still being unemployed, I cannot find "that he has expressed remorse and sufficiently accepted responsibility for his actions." *iShopNoMarkup.com, Inc.*, 2012 WL 716928, at *6; *see also S.E.C. v. Drucker*, 528 F. Supp. 2d 450, 453–54 (S.D.N.Y. 2007) (finding that the defendant, an associate general counsel who traded under similar circumstances as Bankosky, had "yet to take responsibility for what he has done"), *aff'd*, 346 F. App'x 663 (2d Cir. 2009).

## CONCLUSION

For the foregoing reasons, Bankosky shall be prohibited for a period of ten years from acting as an officer or director of any issuer that has a class of securities registered pursuant to section 12 of the Exchange Act or that is required to file reports pursuant to section 15(d) of the Exchange Act. The Clerk of Court is instructed to close the motion.

SO ORDERED.

Date: May 21, 12
New York, New York

HAROLD BAER, JR.
United States District Judge

5